Number 5 is Das v. Tata Consultancy Services Ms. Case Thank you. Good morning, your honors. May it please the court. My name is Kristen Case and I represent the appellant in this matter, Shantanu Das. My client filed his claim in district court after working for the defendant for more than two years. He sought in the district court more than $300,000 in unpaid wages. Appellant filed his claim under two causes of action that are before the court today. One, for violation of the Illinois Wage Payment and Collection Act, and two, for fraudulent misrepresentation. The Illinois Wage Payment and Collection Act provides for a right to wages pursuant to an agreement between the parties or a contract between the parties. For purposes of this appeal, the parties agree there is no contract. So the only question at this stage is whether Plaintiff pled sufficient facts to evidence an agreement between he and the defendant. Plaintiff pled two alternative theories here. First, he pled that prior to August 22, which is an important date because that is when the defendant issued what they call the formal incentive plan. Prior to August 22, Plaintiff pled that beginning in April and continuing through August 13, that the individual defendant, Defendant Baja, made repeated statements to Plaintiff and the other salespeople about what compensation they could expect. Because time is short, why don't you move to that second alternative? Okay, the second alternative is post-August 22. So on August 22, after four months of making very specific statements to the salespeople, Defendant Baja issued what he purported to be the exact version of the August 13 PowerPoint, which Plaintiff pled captured everything that had been said to him in the four months prior. Now on August 22, the defendant sent an email to the sales team and he said in that email, this is just the formal version of what was in that August 13 PowerPoint. He didn't ask them to confirm receipt, he didn't ask them to sign it. And that was partially true. The first page was identical to everything he had told the salespeople for the four months prior. It was also identical to what was contained in the PowerPoint. However, there was a second page snuck into the attachment, and that page contained, and this is in Exhibit 2, Charm and a Complaint, but that page contained just about every disclaimer and discretionary language you can imagine. So Ms. Case, we've got a regulation interpreting the statute. We've got majority and minority views of the various case law. No circuit precedent. A dearth of Illinois precedent. We're charged with making this determination with regard to whether or not written disclaimers can negate mutual assent necessary for the formation of the agreement, not a contract of the agreement. What is your best authority that we should rule that the disclaimers do not negate assent? The best authority, in my opinion, is the regulation and the cases that came down after the regulation. Although there is no legislative history that I can find describing it, I believe the regulation was passed in 2014 because the cases were starting to get it wrong in the Northern District. And so the regulation is very detailed and it's very specific, and it covers exactly this issue. It says disclaimers like that are at issue here do not negate an agreement. Does the fact that we don't have a horn book, but we do have conduct, affect that analysis? Yeah, I absolutely think so. I mean, first, you've got the policy itself. And then second, you have the past conduct, if that's what you're asking about, Your Honor. You have the past conduct of a decade prior where the company issued very specific formula about how these compensation would be calculated. And they followed it to a T, never deviating from it. So, you know, I'm not arguing that disclaimers like this could never negate mutual assent. But what I'm arguing is that for purposes of the pleading stage, that determination cannot be made out of the box. You know, in my opinion, after this regulation, that requires a lot more information, which would be gleaned from discovery, including what was said before, during, and prior. Is that why the Wharton and the Wilkinson cases differ? Because they're either at summary judgment or there's just more information? I believe so, yes, Your Honor. And I believe that there have been cases which have recognized the regulation, Section 300.450, and then later found that there wasn't assent for a variety of other reasons. But I don't think you get there at the pleading stage, because for purposes of the pleading stage, taking all the facts as true as we must, plaintiff pled that, you know, there were many statements made before, and that the past conduct existed, and then he pled the statements that were also in the August 22nd document. I mean, for all we know, the discovery could show that in the past years, when compensation plans were distributed to the sales force, that those plans, too, contained disclaimers and discretionary waiver authority. That's right. Possible. I mean, I don't know. Yeah, that's right, Your Honor. And, you know, we would argue, if that was the case, and we've not seen all of those, but we would argue if that was the case that the past history, the past practice of never exercising discretion and never, you know, disclaiming, you know, any amount that they promised to pay could give rise to the assent as defined under the regulation. And we know, don't we, from Illinois law that Illinois law deems relevant, not irrelevant, the past pattern of activity, course of conduct between the parties in ascertaining whether there's an agreement within the meaning of the state statute. Correct. Both the Landers case held that, and the Landers case is specifically on point because it dealt with, you know, a second defendant who claimed they never assented to the terms, but the Landers court said, well, wait a minute. You paid this commission exactly per the terms you promised. So that alone, that past practice evidences assent. Can you help me on one thing? Is there a way in looking at the information in the PowerPoint slides, and I don't want to bog this down in a math exercise or anything, but is it just pretty obvious how you get to the numbers here by looking at the particulars about the new compensation plan, the thresholds that are outlined in the PowerPoints and in the plan document itself? Yes. You could get to the numbers quite easily once you have the total sales. Okay. Are the total sales, is that a dollar amount available to us, or is it in the pleading or anything? It's not in the pleading, and it wasn't available to my client after he left because he was never given that precise figure. He is certain that he exceeded all of the numbers, but he didn't have the precise figure. Okay. My reading of the complaint, and in keeping with the brief, is that he essentially maxed out or was pretty close to it. So therefore, he was owed the 430 or 435. That's right. And he only got 97 or 98 in the lawsuits about the differential. That is right, and the plan, both what was said verbally prior to August 22nd and then what is in the formal plan both capped commissions, which also, in my opinion, certainly suggests that they are not discretionary or something that couldn't be counted on. But, yes, they capped them at 434.40, I think, and he pled that he exceeded that. He grew his accounts by approximately 72.2 million. One thing I did want to point out to the court is that, you know, it's important to look at what the parties refer to as the majority opinions because— The majority view. The what? The majority view. I'm sorry. Yeah, the majority view. So almost all of those came out pre-2014, and so the district court didn't address the regulation at all in the decision, even though plaintiffs relied upon it, and so the couple cases that do remain with the majority view post-2014 also didn't mention it at all. They didn't address the regulation at all, and I don't know if the parties didn't raise it in their brief or the court just didn't want to address it, but I don't think that those cases are instructive here. I think there's one case Wilkinson did. I believe Wilkinson was at summary judgment, not motion to dismiss. Correct. Correct. And that's, you know, that's the threshold question here is, you know, this is for purposes of pleading. We're not in a position to offer any sort of evidence at this stage. The question is just rather plaintiff pled a claim, which, you know, plausibly could state recovery for these wages. If there's no more questions, I'll move on to the fraudulent misrepresentation count briefly. Or you could reserve your time, too. Yes, I will do that. I will reserve my time. Thank you. You have 16 seconds. Mr. Pohl. Good morning, Your Honors.  My name is David Poehl, and I am counsel for the appellees in this matter, Mr. Amit Bajaj and Tata Consultancy Services Limited. Your Honors, this is a case where, as was indicated in the first part of the argument, there is a split in the Northern District of Illinois on a very specific issue. That specific issue is whether express disclaimers in certain documents negate agreement for purposes of the Illinois Wage Payment and Collection Act, which, for purposes of brevity, I will refer to throughout as the Act. Your Honors, I believe well-established canons of statutory interpretation necessitate the affirmance of the district court's decision here, albeit maybe not on the same grounds that was reasoned by Judge Kendall. The definition of an agreement has been well-established throughout the history of common law and in Illinois. It is defined in the restatement. It is defined in Illinois law as a manifestation of mutual assent between two or more persons. Now, what is at issue in this case, Your Honor, is whether that regulation even applies or whether the court should even defer to it in this present context. Now, to talk a little about whether to defer, Your Honors, just to go back to the statutory definition, the Act defines wages as any compensation owed an employee by an employer pursuant to an employment contract or agreement between the two parties, whether the amount is determined at a time, task, piece, or any other basis of calculation. Now, the Act itself does not define agreement. The Act was passed in 1974, and for 40 years there was no definition of agreement in any Illinois regulation. Now, when we're interpreting a statute as we are here, the question is, what does agreement mean under the statute? Well, the Illinois Supreme Court in the decision of Bowdoin v. Illinois Department of Law Enforcement, 171 Illinois 2nd 230 from 1996, that is a case where they affirmed the appellate court's decision that an agency, the Illinois Human Rights Commission, misinterpreted the definition of a statutory term. And they laid out what is really the black letter law in Illinois, and since it's just a case sitting in diversity, also for purposes of this appeal. And that is, when we are looking at statutory language, the best indicator of legislative intent is the plain and ordinary meaning of the terms used. Now, here we are dealing with the term agreement. Which is just to say that the statute governs rather than looking at what's in anybody's head. That's exactly right, Your Honor. And I believe that's why this is a straightforward issue in my opinion. But the Illinois case law, just in the interest of time, the Illinois case law does seem pretty clear that agreement, maybe it means other things, but it at least would incorporate a situation where there's mutual assent between two parties. And what I have a hard time with is if we apply Rule 8a pleading, and we think about Twombly and Iqbal, and we look at the allegation in paragraph 9 of this complaint, which deals with the history between the parties, the past course of dealing, why isn't it at least plausible that in the past there were incentive compensation arrangements that likewise included disclaimers and reservations of discretion, yet the compensation was paid? In other words, I don't see how we can conclude as a matter of law that the presence, based upon everything I've seen in Illinois, that the presence of a disclaimer or discretion categorically precludes a conclusion that there's mutual assent and therefore an agreement within the meaning of this statute. Well, Your Honor, I think to speak to that concern, there have been cases, Illinois cases, which I agree are Northern District cases, that while not binding on this case, have granted 12b-6 motions to dismiss at the point. This is the so-called split business. I don't know that it's all that helpful for us to think about a split in the district courts and is the majority right or is the minority right. I just would rather focus on the statutory language, focus on what's alleged here, and figure this out. I would too, Your Honor, and that's a fine interlude, I think, segue into talking about when we're looking at the cases in Illinois that talk about implicit conduct. That sounds like what you're talking about here, not take the agreement off the table for a second. So if discovery turns out to show that in past years when Mr. Das worked in the sales force here, that there were, in fact, incentive compensation plans. They're different than this one, but they existed. They existed in writing, and when you look at them, they too contain disclaimers and reservations of discretion, not to pay bonus amounts or not to pay incentive compensation. I would say, Your Honor, the answer to that and why this case does not need to go beyond the pleading stage is because there is an express disclaimer disclaiming any contract, enforceable contract. Not only that, I think what's key here is that it provides Tata with sole discretion. Right, but what if past plans did too? Well, Your Honor, I think that this is one thing that is important. They allege in the complaint that this is the first plan of its kind. So I don't think past incentive plans is very helpful here because it's specifically alleged in the complaint that the SST incentive plan, which is presently before the court, was the first plan of its kind. It's not exclusive. It has a flashy little title to it and all that, but it's an incentive compensation arrangement is what it is. Well, Your Honor, I don't think that it's been sufficiently alleged in the complaint itself that there were definite and specific terms, which is another thing that you're going to need to have an agreement here. It can't just be based on, oh, in the past you had an incentive program. Now you have another incentive program. It has to actually look at the conduct, like for the Landers case, for example. Fair enough, but under Rule 8A, right, what I worry about is for us to agree with your, we have to just flyspeck the daylights out of this complaint. I don't think you do, Your Honor. I think that, again, under, and I think Illinois law helps here, Illinois law in Zabinski and Landers, those are also two cases that said that the definition of an agreement is a manifestation of mutual assent between two parties. It didn't say anything about disclaimers, and when you do have these disclaimers in the document… Put yourself in the plaintiff's shoes for a minute. He sits through, as alleged, a whole bunch of meetings for a long time saying, hey, we have a new incentive, get out there and hit these targets and you all will make a lot of money. And he does it, and then he gets a PowerPoint slide deck that corroborates it. Yeah, he's going to make real money here, $400,000. And then he gets a plan document, and then the employer later comes along and says, you know what, it's all a hoax. We never meant it. Well, I wouldn't say… It's all a ruse. Your Honor… I mean, that, there can't be mutual assent in a fact pattern like that where he hits the streets and hits the revenue targets. The question, Your Honor… That's what I've been doing for 10 or 15 years at the company, and every time they paid me. This time they didn't. I don't have any idea why. Your Honor, I think that because in this situation there's no unequivocal promise of payment, and that is the stand, because look, even if the court were to find… How do you know there wasn't, how do you know that's not true in the past? Well, Your Honor, I don't think the past, I mean, if there was more… Illinois law tells us the past matters. Well, Illinois law tells us the past matters when there is actually evidence of implicit conduct between the two parties that gives rise to an inference of an agreement. That is not alleged in the amended complaint. And, Your Honor, even looking in the light most favorable to the plaintiff, as the district court did in this case, they ultimately found that the majority view is more sensible than the minority view, because the majority view is the only view that really takes seriously the common law definition… I would purge that vocabulary. It's not all that helpful to talk about majority and minority view of district court opinions. I understand, Your Honor, but I'm… District court opinions count for zero in this case. I understand that, Your Honor. Real decisions by Illinois courts count in diversity litigation, but decisions of district courts do not count. I understand that, Your Honor, and I'm not saying that… Well, isn't it important then, I think, to look at the regulation? The regulation discusses what an agreement is, what disclaimers are. There's a lot of common parlance in the Illinois regulation 300.450 with what we have going on here. What role do you say the regulation plays? I would say, in this case, Your Honor, that it plays no role whatsoever, because the way agreement has been interpreted in Illinois common law controls. I think the only part of the agreement that could control here is the first part that is consistent with that definition. When they go off, when the Illinois Department of Labor… It has no legal effect? Is that your answer? That the Department of Labor's regulation implementing a statute has no legal effect? Is that what you're saying in response to Judge Brown? I am saying it has no legal effect if the definition of agreement is unambiguous, which we argue that it is in this case. Has any decision in Illinois said that the regulation has no legal effect? Is that your honor? Has any decision by an Illinois court held that the regulation has no legal effect? This particular regulation? Yes. It has not been addressed, Your Honor. And I think that, again, when you look at the Illinois Supreme Court case law on this issue, they clearly say that when a statutory term is unambiguous, i.e. agreement, there is no need of any kind of other statutory construction aids, whether they be regulations, whether they be anything else. So we believe that the definition of agreement controls the district court rule correctly. Thank you, counsel. And this court should affirm. Thank you. Ms. Case, you have 16 seconds. Talk fast. Thank you, Your Honor. I just wanted to touch upon the point that he made about the regulation. This court has repeatedly held that regulations like this are entitled to substantial deference. I am not aware of any Illinois state court case that refused to follow a regulation. There's cases that refused to follow administrative law judge decisions, but those are different for the reasons I say in my brief. Thank you. Case is taken under advisement.